No. 25-1787

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————————

VICTIM RIGHTS LAW CENTER, TARA BLUNT, T.R., by and through
his parent, Tara Blunt, KAREN JOSEFOSKY, A.J., by and through
his parent, Karen Josefosky,
*Plaintiffs-Appellees,*
v.
UNITED STATES DEPARTMENT OF EDUCATION, LINDA McMAHON,
in her official capacity as Secretary of Education, CRAIG TRAINOR,
in his official capacity as Acting Assistant Secretary for Civil Rights,
*Defendants-Appellants.*

————————————

On Appeal from the United States District Court
for the District of Massachusetts

————————————

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING
APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

————————————

BRETT A. SHUMATE
  *Assistant Attorney General*
ERIC D. McARTHUR
  *Deputy Assistant Attorney General*
MELISSA N. PATTERSON
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

# INTRODUCTION

In *New York v. McMahon*, --- F. Supp. 3d ----, 2025 WL 1463009 (D. Mass. May 22, 2025), a district court enjoined a reduction in force (RIF) at the Department of Education in part because it believed, relying on the record in this case, that "closures and terminations" at the Office for Civil Rights (OCR) would "hinder[] the Department's ability to effectively enforce civil rights laws and provide guidance to schools regarding compliance with these laws." *Id.* at *15. This Court refused to stay that injunction, *see Somerville Pub. Schs. v. McMahon*, 139 F.4th 63 (1st Cir. 2025), but the Supreme Court disagreed and entered a stay. *See McMahon v. New York*, 145 S. Ct. 2643 (2025). Shortly thereafter, it reiterated that its emergency orders "squarely control[]" lower courts' resolution of motions seeking interim relief because they "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

This case is unquestionably a "like case" to *New York*. That is why the district court called *New York* the "Lead Case," why it relied throughout on *Somerville*, and why the *New York* injunction cited to the record in this case to establish harms to OCR purportedly flowing from the RIF. *New York* thus "squarely control[s]." *Boyle*, 145 S. Ct. at 2654. Respectfully, that is an easy call.

Plaintiffs nevertheless oppose a stay. That is their prerogative. This Court, however, is bound by even the Supreme Court's "probabilistic holdings"; "[l]ower court judges may sometimes disagree with [the Supreme] Court's decisions, but they

are never free to defy them." *National Insts. of Health v. American Pub. Health Ass'n*, ---
S. Ct. ----, 2025 WL 2415669, at *3-4 (Aug. 21, 2025) (Gorsuch, J., concurring in part
and dissenting in part).  The Court should immediately stay the injunction.

## ARGUMENT

### I.  Plaintiffs Cannot Escape The Supreme Court's Controlling Decision In *New York*.

This case is "squarely control[led]" by *New York*.  *See* Mot. 9-10.  Plaintiffs
observe that *New York* was "unsigned" and "unexplained," Opp'n 2, and urge this
Court to infer "no more … than was essential to sustain" it, Opp'n 11 (quotation
omitted) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983)).  But what was
"essential" to the *New York* stay—determinations that the government had "ma[d]e a
strong showing that it is likely to succeed," *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2550
(2025) (alteration and quotation omitted), and that the equities favored a stay,
*Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam)—require a stay here.
Indeed, the Supreme Court reached those determinations even though the district
court justified the injunction based on harms to OCR and plaintiffs contended that "if
the halls of OCR are empty, then individuals will have little chance of having their
concerns resolved by the agency."  Somerville Opposition 13, *McMahon v. New York*,
No. 24A1203 (U.S. June 13, 2025).  Plaintiffs' suggestion that the district court in *New
York* found standing only "based on claimed delays in receiving federal money,"

Opp'n 5, is wrong; its analysis expressly addressed OCR. *See New York v. McMahon*, ---
F. Supp. 3d ----, 2025 WL 1463009, at *15 (D. Mass. May 22, 2025).

The Supreme Court's decision "not to announce any reasoning," Opp'n 13, is
irrelevant; lower courts are bound by even "probabilistic holdings." *National Insts. of
Health v. American Pub. Health Ass'n*, --- S. Ct. ----, 2025 WL 2415669, at *4 (Aug. 21,
2025) (Gorsuch, J., concurring in part and dissenting in part). That is why, in *Gateway
City Church v. Newsom*, 141 S. Ct. 1460 (2021), the right answer on an interim motion
was "clearly dictated," *id.*, by an earlier unreasoned decision, *see South Bay United
Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021). There were concurring opinions in
*South Bay*, *see* Opp'n 13, but none spoke for a majority of the Court.[1] *New York*
controls.

## II.     Even Absent *New York*, A Stay Is Warranted.

### A. The Government Is Likely To Succeed.

#### 1.  The District Court Lacked Jurisdiction.

a.     Significant portions of the district court's analysis turn on speculation
about harms flowing from the RIF, which is inadequate under Article III. Mot. 13.

---

[1] Justice Kavanaugh has suggested that the Court sometimes does not issue
emergency opinions to not "predetermine the case's outcome" and "hamper
percolation across other lower courts on the underlying merits question." *Labrador v.
Poe ex rel. Poe*, 144 S. Ct. 921, 934 (2024) (Kavanaugh, J., concurring); *see* Opp'n 13.
His point is that the Court might not issue an opinion to avoid prejudging the *merits* of
the appeal—not that lower courts may ignore the Supreme Court's interim orders
when deciding interim motions.

Plaintiffs dispute an obligation to identify a "certainly impending" injury, Opp'n 11, but *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 385 (2024)—which *rejected* standing—did not undermine the "certainly impending" standard articulated in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013), which the Supreme Court still applies. *See Murthy v. Missouri*, 603 U.S. 43, 73 (2024); *OPM v. AFGE*, No. 24A904 (U.S. Apr. 8, 2025).

Plaintiffs suggest that T.R. "is excluded from public school" and "can never recover his lost educational opportunities." Opp'n 11-12. Any such injuries, however, cannot support an injunction that does far more than redress them. If T.R. believes that OCR is failing to take discrete action required by law, the appropriate course is to seek to compel it, Mot. 13, or perhaps to pursue remedies against his school.

Plaintiffs' suggestion that the government "cites nothing" to support this argument, Opp'n 15, is wrong. First, under Article III, a plaintiff must have standing "for each form of relief that is sought," *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (quotation omitted), which means that plaintiffs cannot demand a remedy broader than necessary to remedy their injury. Mot. 13. Second, an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see* Mot. 13-14. Either way, if plaintiffs are injured by OCR's failure to perform particular mandatory functions, they could demand those functions be

performed.  Plaintiffs suggest that such a lawsuit would not suffice "because the RIF makes it impossible for OCR to complete investigations promptly," Opp'n 16, but plaintiffs' skepticism that the government could comply with a hypothetical order to expedite two investigations is no reason to preemptively place OCR into receivership.

Plaintiffs further suggest that the RIF "ended [Victim Rights Law Center's (VRLC's)] practice of representing students in OCR investigations."  Opp'n 16.  But OCR still exists; since March 11, 2025, it has opened 497 investigations and 32 directed investigations and resolved 442 cases through voluntary agreements.  Dkt. No. 68-1, at 2.  If VRLC has chosen to stop representing OCR complainants, that injury is self-inflicted.  And VRLC's argument that it has spent time "researching alternative remedies," Opp'n 16, shows that it is performing the function for which it was created—not that OCR has "imposed [an] … impediment to [its] advocacy businesses." *Alliance*, 602 U.S. at 395.

**b.**     Plaintiffs fail to rebut the government's demonstration that their claims are precluded by the Civil Service Reform Act (CSRA), which permits only affected employees to challenge their terminations, and only before the Merit Systems Protection Board.  Plaintiffs observe that this Court rejected these arguments in *Somerville*, but *New York* undermines any precedential force *Somerville* would otherwise have.  *See* Mot. 11 n.3.

Plaintiffs observe that the CSRA "does not even mention non-employees," Opp'n 17, but that is the point:  by excluding plaintiffs from the CSRA, the statute

5

precludes their claims. *See United States v. Fausto*, 484 U.S. 439, 448-49 (1998); *National Treasury Emps. Union v. Vought*, --- F.4th ----, 2025 WL 2371608, at *6 n.3 (D.C. Cir. Aug. 15, 2025). Plaintiffs contend that *Fausto* is distinguishable because Mr. Fausto was a federal employee, a class of individuals given "attention" "throughout" the statute. Opp'n 17 (quotation omitted). On that theory, Mr. Fausto's claims could have been heard in district court if he had persuaded someone else injured by his termination—his creditors, his wife, etc.—to sue on his behalf. Allowing such seriatim challenges would recreate many of the same problems as universal injunctions, while reviving the "haphazard" "patchwork" the CSRA was enacted to avoid. *Fausto*, 484 U.S. at 444-45; *see* Mot. 16.

### 2. Plaintiffs' Claims Fail On The Merits.

**a.** With regard to reviewable agency action, plaintiffs clarify that they "challenge only the RIF." Opp'n 18 n.3. Yet if the only thing plaintiffs challenge is a personnel action, their claims are unquestionably precluded by the CSRA. Beyond that, plaintiffs' concession that they challenge only a personnel action underscores why there is no basis for the district court's order directing the government to

"continue to investigate all complaints alleging violations of federal civil rights laws,"
Dkt. No. 40, at 42-43 (Op.), a requirement plaintiffs make little effort to defend.[2]

**b.**     The government is likely to succeed in demonstrating that its actions
were not arbitrary or capricious.  Plaintiffs state that there is "no evidence" that the
Secretary considered relevant factors and fault the government for failing to identify
"data" in the record.  Opp'n 20.  This case, however, was decided in a preliminary-
injunction posture, before any record was filed.  The court's assumption that plaintiffs
would eventually prevail on summary judgment is irreconcilable with the appropriate
standard of review, as in the personnel context courts are "quite wrong" to "routinely
apply[] … traditional standards governing more orthodox" relief.  *Sampson v. Murray*,
415 U.S. 61, 83-84 (1974).  *Dugan v. Ramsay*, 727 F.2d 192, 193-94, 196 (1st Cir. 1984),
which addresses a challenge to an Office of Personnel Management practice, does not
suggest otherwise.  Nor is it relevant that prior administrations believed that OCR
should operate with a greater headcount; such decisions are entrusted to the current
leadership of the Executive Branch, not their predecessors.

**c.**     While plaintiffs believe that "the Department's actions may eventually
have the effect of preventing OCR from conducting 'prompt investigations,' the

---

[2] Plaintiffs cite *Adams v. Richardson*, 480 F.2d 1159, 1163 (D.C. Cir. 1973) (per
curiam), to contend that courts may review whether OCR was initiating enforcement
actions within a "reasonable time."  Opp'n 19 (quoting *Adams*, 480 F.2d at 1163).
Even assuming that *Adams* remains good law after *United States v. Texas*, 599 U.S. 670,
677 (2023) (no standing to seek prosecution of others), it is irrelevant if plaintiffs
challenge only the RIF.

challenged agency actions do not themselves violate the Department's regulatory obligations." *Carter v. U.S. Dep't of Educ.*, No. 25-0744, 2025 WL 1453562, at *8 (D.D.C. May 21, 2025). Beyond that, plaintiffs observe that 20 U.S.C. § 3473 does not provide the Secretary authority to abolish or alter the delegation of functions to OCR, Opp'n 21, but this statute constitutes a grant of authority that the government has not invoked—not a prohibition on invoking other authorities, like the authority to conduct a RIF.

     **d.** Reinstatement does not fall within a district court's equitable powers. Mot. 19. Plaintiffs observe that "the terminations had not taken effect when the court stayed them," Opp'n 22, but the injunction requires individuals to be returned from administrative leave to active status. Precedent makes clear that such relief is inappropriate. *See Sampson*, 415 U.S. at 83 (noting "unwillingness of courts of equity to enforce contracts for personal service").

## B. The Equities Favor A Stay.

     The equities overwhelmingly favor a stay because the injunction infringes on the Executive Branch's constitutional authority and requires the government to expend millions of dollars it can never recoup while vastly exceeding what is plausibly necessary to remedy the injuries plaintiffs assert. Mot. 20-21.[3]

---

[3] Plaintiffs' suggestion that the government waived arguments about the injunction's financial and operational burdens is incorrect. *See* Dkt. No. 48, at 6 (explaining that "all of [the] arguments" presented in *New York* apply here); Dkt. No.

Plaintiffs point to harms they believe the RIF will cause, but those harms (1) are speculative, and (2) could be remedied by narrower relief. Plaintiffs contend that the government would likely resist any effort to compel it to act on particular complaints on particular timeframes, Opp'n 24, but if plaintiffs are not even entitled to that relief, they certainly are not entitled to the broader relief they obtained here.

Plaintiffs defend the injunction as "tailored to cure the violation." Opp'n 23. That contention is wrong because no statute requires OCR to maintain a particular number of employees or offices. Beyond that, the appropriate question is whether the injunction will provide "complete relief" to plaintiffs, not whether it will correct all legal errors, *CASA*, 145 S. Ct. at 2556-57; federal courts do not possess a "roving commission" to remedy all legal violations, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Plaintiffs contend that the Administrative Procedure Act authorizes a court to "set aside" agency action as to everyone, Opp'n 24-25, but even if that is true—a proposition the government contests—it does not speak to the scope of a preliminary injunction.

Plaintiffs also argue that the injunction involves "only a small fraction of employees reinstated in *New York*." Opp'n 2; *see also* Opp'n 12. Retaining the affected employees on administrative leave, however, costs the Department nearly $1 million

---

57, at 3 ("The Department is still faced with onboarding hundreds of employees and continuing to pay their salaries when the Department has determined it does not require their services."); Mot. 20 (similar).

per week. Dkt. No. 68-1, at 2. But more fundamentally, the narrower scope of the injunction reduces both its costs *and* any possible benefits it provides, leaving the equitable balance identical to that in *New York*. Indeed, the Supreme Court has stayed orders requiring reinstatement of only a few individuals. *See Trump v. Boyle*, 145 S. Ct. 2653 (2025); *Trump v. Wilcox*, 145 S. Ct. 1415 (2025).

Plaintiffs' suggestion that the government "defied the injunction," Opp'n 24, is both wrong and irrelevant. Consistent with the injunction, employees subject to the injunction "do not have a separation date." Dkt. No. 47-1, ¶ 6. In calling for weekly status reports, however, the district court necessarily contemplated that it would take time to return them to active status. *See* Op. 43. The government has detailed the steps that it is taking to do so "in a manner that is legally compliant, technologically feasible, and managerially and operationally nondisruptive." Dkt. No. 67-1, ¶ 6. But even if there were a basis for plaintiffs' accusations of noncompliance, that still would not undermine the government's entitlement to a stay. *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 (2d Cir. 2009), which addressed the entitlement to Rule 60(b) relief of litigants who were "in contempt of court" and "subject to arrest should they set foot in the United States," has no relevance here.

Finally, the government's decision to wait to seek a stay until the Supreme Court ruled in *New York* does not weigh against a stay. *See* Opp'n 23. Had the government sought a stay earlier, this Court could have denied it in a perfunctory order citing *Somerville*. The government would have then had no way to obtain relief

10

other than to seek it from the Supreme Court.  The government instead waited until the Supreme Court abrogated *Somerville*—thereby giving the district court the chance to correct its own errors before asking a higher court to do so.  The district court declined that opportunity, but this Court should not repeat the mistake.

## CONCLUSION

The Court should enter an immediate stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
ERIC D. MᶜARTHUR
  *Deputy Assistant Attorney General*
MELISSA N. PATTERSON
 */s/ Steven A. Myers*
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

August 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the motion contains 2600 words.  It complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word in proportionally spaced 14-point Garamond typeface.

*/s/ Steven A. Myers*
STEVEN A. MYERS

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I electronically filed the foregoing

reply with the Clerk of the Court for the United States Court of Appeals for the First

Circuit by using the appellate CM/ECF system.  Participants in the case are

represented by registered CM/ECF users, and service will be accomplished by the

appellate CM/ECF system.

/s/ Steven A. Myers
STEVEN A. MYERS